UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IGAL SAGY,

                Plaintiff,

      v.

THE CITY OF NEW YORK, et al.,

                Defendants.

**MEMORANDUM & ORDER**
18-CV-1975 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Igal Sagy ("Plaintiff") brought this action against the City of New York, the 77th Precinct, and Officers Richard Finklestein, Brian Doyle, and Andrew Tofalli (collectively, the "Defendants"), asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for (i) false arrest, (ii) malicious prosecution, and (iii) excessive force.  ECF No. 1.  These claims arise from Plaintiff's arrest on January 2, 2017, and his subsequent prosecution, initiated that same day. ECF No. 89-1 at 64–70.  Defendants now move for summary judgment on all of Plaintiff's claims.  ECF No. 88.  For the reasons set forth below, the Court grants Defendants' motion for summary judgment in its entirety.

## BACKGROUND

At 8:20 PM on January 2, 2017, Xia Lightbody called 911 to report that she had been assaulted and robbed near the corner of Albany Avenue and Lincoln Place in the Crown Heights neighborhood of Brooklyn.  ECF No. 89-1 ("Defendants' Evidence and Depositions") at 2. Earlier that evening, Plaintiff and Ms. Lightbody were having a discussion in Plaintiff's red SUV at the corner of Albany Avenue and Lincoln Place.  *See* ECF No. 89-1 at 10–14, 16; ECF No. 87 ("Plaintiff's Evidence and Depositions") at 59–63.  The discussion escalated into an argument,

which spilled out of Plaintiff's car and became physical.  ECF No. 89-1 at 14; ECF No. 87 at 62–63.  Afterwards, Plaintiff drove off in his car.  *Id.*

In her 911 call, Ms. Lightbody reported that an "Arabic" male had choked her and stolen her money before entering a red Jeep and fleeing down Albany Avenue in the direction of Eastern Parkway.  ECF No. 89-1 at 3.  On patrol in their marked police vehicle, Officers Brian Doyle and Andrew Tofalli heard an NYPD radio communication reporting the robbery and began to canvass the area for the red Jeep.  ECF No. 87-1 at 16–17.  Doyle and Tofalli spotted Plaintiff's red SUV stopped at a red light on President Street at the intersection of President Street and Albany Avenue, three blocks away from where Ms. Lightbody had reported being robbed.  ECF No. 87-2 at 27–29; *see also* ECF No. 89-1 at 14.

As Doyle pulled the police car in front of Plaintiff's car, Officers Richard Finklestein and Tomas Campuzano arrived in a separate marked police car.  ECF No. 87 at 63–64; ECF No. 89-1 at 44–45.  Doyle and Tofalli exited their vehicle and opened the door of Plaintiff's car.  ECF No. 87 at 76; ECF No. 89-1 at 45–46.  Eight minutes later, another officer brought Ms. Lightbody to the scene, where she identified Plaintiff as the individual who assaulted and robbed her.  ECF No. 89-1 at 52, 54; ECF No. 87 at 166, 236 (noting Plaintiff was aware that Ms. Lightbody had accused him of robbing her).  At some point within that eight-minute window and prior to Ms. Lightbody's arrival, Officer Doyle handcuffed Plaintiff.  ECF No. 87 at 114–15; ECF No. 89-1 at 57–58.

Plaintiff was then taken to the 77th Precinct.  ECF No. 87 at 46, 114; ECF No. 89-1 at 61; *see also* ECF No. 87-1 at 44.  Plaintiff arrived at the precinct at 8:30 PM.  ECF No. 89-1 at 65.  The desk sergeant noted, upon Plaintiff's arrival at the precinct, that Plaintiff's condition was "app[arently] normal."  ECF No. 89-1 at 65.  While Ms. Lightbody was also at the precinct, she

spoke with Officer Finklestein, telling him that she and Plaintiff were acquainted, that Plaintiff called her to meet him, and that he subsequently choked her and took $300 out of her pocket when she rejected his advances. *See* ECF No. 89-1 at 67–69. Officer Finklestein also vouchered $6,831.00 that Plaintiff had in his pocket when he was arrested. ECF No. 87 at 149; ECF No. 89-1 at 71–72. Plaintiff's arrest was processed around midnight. *See* ECF No. 87–2 at 50.

On January 3, Plaintiff was arraigned on a criminal complaint that charged him with robbery in the third degree, grand larceny in the fourth degree, petit larceny, criminal possession of stolen property in the fifth degree, attempted assault in the third degree, menacing in the third degree, and harassment in the second degree. *See* ECF No. 89-1 at 77. On January 5, Ms. Lightbody signed a Waiver of Prosecution stating that she did not wish to continue the prosecution against Plaintiff because she had "moved on and no longer want[ed] to press charges." ECF No. 89-1 at 81. On January 6, the case against Plaintiff was dismissed and sealed. *Id.* at 83.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A material fact is a fact that may affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact when there is insufficient evidence for a reasonable jury to return a verdict for the nonmovant. *Id.* When ruling on a motion for summary judgment, a court views the evidence in the light most favorable to the nonmovant, making all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

While the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the burden then shifts to the nonmovant to produce "specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587.  The nonmovant may not, however, "rely on conclusory allegations or unsubstantiated speculation."  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Where "the nonmoving party bears the burden of proof at trial," *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993), but "fails to come forward with enough evidence to create a genuine issue . . .[,]" the court must grant summary judgment.  *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996).

Courts should "refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments."  *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022).  However, "there must be evidence on which the jury could *reasonably* find for the [non-moving party]."  *Id.* (alteration in original) (quoting *Liberty Lobby*, 477 U.S. at 252). The Court is not "required to assume the truth of testimony 'so replete with inconsistencies and improbabilities that a reasonable jury could not [base a favorable finding on it].'"  *Saeli*, 36 F.4th at 457 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553–55 (2d Cir. 2005) (alteration in original)).

## DISCUSSION

"Under [S]ection 1983, individuals may bring a private cause of action against persons 'acting under color of state law' to recover money damages for deprivations of their federal or constitutional rights."  *Gutierrez v. City of New York*, No. 18-CV-3621, 2021 WL 681238, at *5 (E.D.N.Y. Feb. 22, 2021) (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014)).  To establish a Section 1983 claim, a plaintiff must show that "a person acting under color of state law" violated "a right secured by the Constitution and laws of the United States."

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal

quotations and citations omitted).  In the instant case, all of Plaintiff's claims—false arrest,

malicious prosecution, and excessive force—involve violations of his Fourth Amendment rights.

*See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 114–16 (2d Cir. 1995) (finding that Fourth

Amendment provides source of Section 1983 claims premised on a person's arrest and malicious

prosecution).

### I.         False Arrest Claim

The elements of a claim for false arrest under Section 1983 are as follows:  (1) the

defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3)

the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise

privileged.  *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018).  All the elements must be met in

order to make a claim.  *Id*.  Here, Defendants contend that they are entitled to summary judgment

on the false arrest claim because Plaintiff's confinement was privileged on the ground that the

arresting officers had probable cause.

Probable cause to arrest is "an absolute defense to a false arrest claim."  *Stansbury v.

Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).  Probable cause exists "when [the defendant] has

knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has committed

or is committing a crime . . . ."  *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013).  Probable

cause may exist where it is based on mistaken information, so long as the arresting officer acted

reasonably and in good faith relying on that information.  *Bernard v. United States*, 25 F.3d 98,

102 (2d Cir. 1994).

In assessing probable cause, a court "must consider [only] those facts available to the

officer at the time of the arrest and immediately before it," *Stansbury*, 721 F.3d at 89 (quoting

*Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)) (alteration in original), as "[p]robable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). "[A] court may decide the question of probable cause as a matter of law 'if there is no dispute as to the pertinent events and the knowledge of the officers.'" *Abdullah-Sadiq v. Venticinque*, No. 16-CV-7140, 2019 WL 359979, at *3 (E.D.N.Y. Jan. 29, 2019) (quoting *Bishop v. City of New York*, 518 F. App'x. 55, 56 (2d Cir. 2013)).

A victim's identification is "typically sufficient to provide probable cause" absent circumstances that "raise doubts as to the victim's veracity." *Keith v. City of New York*, 641 F. App'x 63, 65 (2d Cir. 2016) (internal quotations omitted); *see also Miller v. City of New York*, 700 F. App'x 57, 58–59 (2d Cir. 2017) (holding that there was probable cause to arrest since it is "proper for the police to rely only on [the victim's] complaint" as there was "no reason to doubt [the] reliability at the time"). Additionally, "[o]nce an officer has probable cause, he . . . is neither required nor allowed to continue investigating, sifting and weighing information." *Panetta*, 460 F.3d at 398 (internal quotation marks omitted).

Plaintiff's objections focus on disputing Ms. Lightbody's version of the events on the date of his arrest and impeaching her credibility. *See* ECF No. 86 at 6, 9 ("allegations made by Ms. Lightbody lack credibility due to inconsistent allegations which are contradictory in nature"). While the differences between Plaintiff's and Ms. Lightbody's versions of the events that evening would have been relevant at a trial on Plaintiff's criminal charges had those charges not been dropped, they are not relevant to determining whether Ms. Lightbody's statements and identification gave the police probable cause to arrest Plaintiff. *See Curley v. Vill. Of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (an "arresting officer does not have to prove plaintiff's version wrong before arresting him"); *see also Bernard v. United States*, 25 F.3d at 102.

Additionally, with respect to Ms. Lightbody, the question is whether there was any reason for the officers to doubt her credibility at the time of the arrest. *See Miller*, 700 F. App'x at 58. Plaintiff asserts that "Defendants knew or should have known that the allegations made by [Ms. Lightbody] were not credible or trustworthy based on the totality of the circumstances that existed at the time." ECF No. 86 at 21. Other than in conclusory fashion, Plaintiff fails to identify any facts casting doubt on Ms. Lightbody's trustworthiness at the time of his arrest. Such conclusory allegations, without more, however, does not raise an issue of fact. *Scotto*, 143 F.3d at 114.

The following facts are undisputed:  (1) Ms. Lightbody called 911 to report that she had been assaulted and robbed in the Crown Heights neighborhood of Brooklyn by an "Arabic" man and that the assailant fled the scene in a red Jeep,[1] *see* ECF No. 90 ¶¶ 1–2; (2) not long after Ms. Lightbody called the police, officers in the area identified a car and an individual matching the description she had given only a few blocks away from where she had reported being robbed, *id*. ¶¶ 3, 10; and (3) Ms. Lightbody was taken to the scene of the arrest, where she identified Plaintiff as the individual who assaulted and robbed her, *id*. ¶ 21. Given these facts, there was no reason for the arresting officers to doubt the credibility or veracity of Ms. Lightbody's

---

[1]     The only factual dispute Plaintiff raises relates to the time of the incident and arrest. Plaintiff claims it was "between 5:00pm and 6:00pm," rather than 8:20pm. ECF No. 86 at 9. Plaintiff has not been consistent about this timing, however. *See* ECF No. 1 at 5 (Plaintiff alleging, in his Complaint, that the "events giving rise to [his] claim occur[ed]" at 6:30 p.m. on January 2); ECF No. 87-2 at 102 (Plaintiff alleging, in his Notice of Claim, that Plaintiff's claims "arose on or about 6:30-7:30 p.m."). Even given these discrepancies, it is undisputed that the conduct occurred over the span of no more than an hour sometime during the evening of January 2, 2017. This window of time is small enough that a dispute over the exact time is immaterial to the question of probable cause. *See De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *11 (S.D.N.Y. Sept. 24, 2012) (finding that robbery victim's identification of the plaintiff two to three hours after the incident at a location approximately four miles away did not render the identifications "so defective that probable cause could not reasonably be based" on them) (*quoting Williams v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007)).

identification at the time of the arrest.  *See, e.g.*, *Gutierrez*, 2021 WL 681238, at \*8 (finding no doubt as to veracity of victim's identification where victim identified perpetrator from a distance of eight feet, approximately thirty-seven minutes after robbery).

Therefore, the Court finds that Defendants are entitled to summary judgment on the false arrest claim because there is no issue of material fact as to whether the arresting officers had probable cause for the arrest.

## II.        Malicious Prosecution Claim

To establish a claim for malicious prosecution, a plaintiff must show:  "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice."  *Anderson v. Cnty. of Nassau*, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004) (citing *Ricciuti v. N.Y. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)); *see also Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995).  Additionally, a plaintiff must show a "seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment."  *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016).  With respect to the fourth prong, "malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation marks and citation omitted).

Probable cause is "an absolute defense" to a malicious prosecution claim.  *Maron v. Cnty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2011).  In the context of malicious prosecution claims, the relevant probable cause determination is whether there was probable cause "to believe [the arrestee] could be successfully prosecuted."  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409,

417 (2d Cir. 1999). "If probable cause existed at the time of arrest," then, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (internal quotation marks omitted). Thus, a "plaintiff must show that the defendants learned of some 'intervening facts' undermining probable cause 'between arrest and initiation of prosecution, [or the] claim[] of malicious prosecution cannot survive.'" *Soto v. City of New York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quoting *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014) (alterations in original). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of [the] intervening fact." *Lowth*, 82 F.3d at 571. Because the Court finds that probable cause existed at the time of Plaintiff's arrest, *see* Section I *supra*, the only way Plaintiff can establish his malicious prosecution claim is by showing that the Defendants discovered some exculpatory evidence between arrest and prosecution.

Plaintiff points to only one fact that Defendants discovered between arrest and prosecution—that he had $6,831 in his possession at the time of his arrest. ECF No. 86 at 22 ("Once it was revealed, among other things, that Plaintiff had approximately $7,000 on him it was not likely that he committed the robbery offenses for which he was charged."). The mere fact that Plaintiff possessed nearly $7,000, however, does not make apparent the "groundless nature of the charges" such to dissipate probable cause. *See Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate, the groundless nature of the charges *must be made apparent* by the discovery of some intervening fact.") (emphasis added). Said differently, the fact that someone is in possession of nearly $7,000 does not make it any less likely that that person stole $300.

Plaintiff also cannot satisfy the malice prong of his malicious prosecution claim. "The Second Circuit denies malicious prosecution claims against police officers unless the plaintiff

9

can establish that the indictment 'was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Wilson v. McMullen*, No. 07-CV-948, 2010 WL 1268055, at \*6 (E.D.N.Y. Mar. 30, 2010) (quoting *Dawson v. Snow*, 356 F. App'x 526, 529 (2d Cir. 2009)).

Plaintiff provides no evidence that either Defendant's involvement in the subsequent prosecution was motivated by malice.  Plaintiff has repeatedly alleged that, during his arrest, he heard Officer Finklestein express a desire for overtime pay.[2]  ECF No. 86 at 5, 7; ECF No. 87 at 57, 83, 114, 163.[3]  His argument appears to be that his prosecution was made in bad faith and motivated not by justice, but to obtain overtime pay.

However, Plaintiff's argument ignores why he was initially prosecuted.  "[M]alice means that the defendant must have *commenced* the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Wilson*, 2010 WL 1268055, at \*6 (emphasis added) (internal quotation marks and citations omitted).  There is no evidence, nor does Plaintiff even argue, that Defendants *commenced* the prosecution with an improper motive.  All parties agree Plaintiff's arrest and indictment commenced after Ms. Lightbody reported that he robbed her.  *See* ECF No. 89-1 at 3, ECF No. 87 at 166, 236. Furthermore, even if the Court accepts as true that Defendant Finklestein was motived by a desire to obtain overtime pay, there is no indication he was *only* motivated by that.  "Only where probable cause to initiate a proceeding is so *totally lacking* may malice be inferred." *Wilson*,

---

[2]     No one else who has been deposed remembers Officer Finklestein making such a comment, and Officer Finklestein has denied doing so.  ECF No. 87-1 at 56–57, 203 (depositions of Officer Tofalli and Sergeant Gonzalez); ECF No. 87-2 at 54 (deposition of Officer Finklestein).
[3]     Officer Finklestein did, in fact, receive overtime pay for processing the arrest.  ECF No. 87-3 at 52.

2010 WL 1268055, at *6 (emphasis added) (internal quotation marks omitted).  Police officers

can be motivated both by a desire to see the ends of justice served and by a desire to be fairly

compensated for their time in doing so.

Therefore, the Court finds that Defendants are entitled to summary judgment on the

malicious prosecution claim because Plaintiff has failed to show that Defendants discovered,

between arrest and prosecution, an exculpatory fact that would call into question the probable

cause that existed at the time of Plaintiff's arrest, and because the Court finds that there is no

genuine issue of material fact that Defendants initiated the criminal proceeding against Plaintiff

without malice.

### III.        Excessive Force Claim

"'The Fourth Amendment prohibits the use of unreasonable and therefore excessive force

by a police officer' during an arrest."  *Goonewardena v. Spinelli*, No. 15-CV-5239, 2021 WL

61876, at *9 (E.D.N.Y. Jan. 7, 2021) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir.

2010)).  "A plaintiff asserting a claim for excessive force must prove that the officer's use of

force was excessive, or objectively unreasonable, under the facts and circumstances known to the

officer."  *Hanniford v. City of New York*, No. 12-CV-40, 2014 WL 7801320, at *7 (E.D.N.Y.

Dec. 23, 2014), *report and recommendation adopted*, 2015 WL 588766 (E.D.N.Y. Feb. 11,

2015); *see also Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013); *Pelayo

v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012).

Evaluating excessive force claims is a case-by-case, inquiry where a district court must

balance a "plaintiff's Fourth Amendment rights with the government interests at stake by

considering:  '(1) the nature and severity of the crime leading to the arrest, (2) whether the

suspect poses an immediate threat to the safety of the officer or others, and (3) whether the

suspect was actively resisting arrest or attempting to evade arrest by flight.'"  *Hanniford*, 2014

WL 7801320, at *7 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).  For force to be excessive it must have exceeded what was "needed for the factual circumstances." *Graham*, 928 F. Supp. 2d at 618.

Plaintiff and Defendants each allege an extremely different set of facts:  Plaintiff alleges that he was "forcefully grabbed and pulled" out of his vehicle, "[thrown] to the ground, tased, punched, stomped on, kicked and beat . . . profusely" by several officers over a period of several minutes.  ECF No. 86 at 10–12.  He claims to have "suffered contusions, swelling, bruising, broken teeth, bleeding and substantial pain." *Id.* at 20.  Conversely, Defendants allege that Plaintiff was never taken to the ground, kicked, stomped, punched, or tased at any point during the arrest process.  ECF No. 90 ¶¶ 17–19.

When considering a motion for summary judgement it is not the Court's job to assess the credibility of conflicting evidence, *Saeli*, 36 F.4th at 457, unless that evidence is "so replete with inconsistencies and improbabilities" that a reasonable jury could not base a favorable finding on it. *Jeffreys*, 426 F.3d at 553–55.  In such circumstances, the courts may "pierce the veil of the complaint's factual allegations," *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)), and "dispose of [the] improbable factual allegations and dismiss the claim." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (internal quotation marks omitted).

Here, Plaintiff's claims are both contradictory and implausible on their face.  Plaintiff claims he was kicked and punched in the head and face, ECF No. 87 at 109, 124, 131, 230, had his head slammed on the ground, *id.* at 90, was tased in the head, *id.* at 105–08, 124, and that an officer stepped on his face, *id.* at 90, 230.  Understandably, Plaintiff claims that this level of abuse caused his face to swell, *id.* at 129, yet photos from him at the precinct show no evidence of swelling or any visible marks on Plaintiff neck or face, ECF 89-1 at 74–75, and his condition

was noted by the desk officer during processing as "app[arently] normal," *id.* at 65.

Additionally, despite allegedly spending at least four minutes on the ground being beaten, ECF

No. 87 at 110, Plaintiff's white track suit appears completely clean in the photos taken at the

precinct, ECF 89-1 at 74–75.

Plaintiff claims that he suffered "contusions, swelling, bruising, broken teeth, bleeding

and substantial pain," ECF No. 86 at 20, however, in the five years since his arrest he has been

unable to produce a single medical record to support these claims.  Plaintiff claims he spoke

regularly to doctors in Israel about his injury around the time of his arrest but has refused to offer

their contact information.  *Id.* at 139–40.  The closest Plaintiff has come to providing any

evidence apart from his own statements is one email from a doctor who did not treat him, and did

not formally examine him, but did "briefly," "casually," and "superficially" examine him "in the

middle of prayers at synagogue" on or about the day of the arrest.  ECF No. 86 at 23–25.  Yet

even this email raises questions.  The doctor who Plaintiff talked to only said he saw some

redness and bruising on his torso, *id.* at 24, but made no reference to any injuries to his head or

neck, despite the fact that Plaintiff repeatedly claims the excessive force he received caused him

to "bleed from [his] mouth sustain [sic] broken teeth," *id.* at 3.  It seems wholly implausible that

a doctor who examined Plaintiff not long after his arrest, even a cursory examination as

supposedly took place here, does not note Plaintiff having any injuries to his head and neck when

Plaintiff claims he was not only bleeding from the mouth earlier that day, but also was subjected

to a level of force resulting in broken teeth.

Plaintiff claims that "five or seven" other people witnessed the police using excessive

force, but he has never been able to identify any of these witnesses.  ECF No. 87 at 119–20.

Where Plaintiff's entire claim rests on his own testimony, despite ample opportunity to

supplement with additional factual information, and this testimony is contradicted by factual evidence, then Plaintiff has failed to meet his burden to "come forth with 'significant probative evidence' [to demonstrate] that a factual dispute does in fact exist." *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 662 (E.D.N.Y. 2008) (quoting *Liberty Lobby*, 477 U.S. at 249); *see, e.g.*, *Henry v. Brown*, 406 F. Supp. 3d 211, 215 (E.D.N.Y. 2016) (granting summary judgment for defendants as plaintiff's medical records did not support allegations of excessive force); *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475–78 (S.D.N.Y. 2003) (granting summary judgment against plaintiff's excessive force claim because his allegations were "so contradictory and fanciful that it cannot be believed by a reasonable person" and thus "may be disregarded").

Therefore, the Court finds that Defendants are entitled to summary judgment on the excessive force claim because Plaintiff has failed to provide sufficient evidence to demonstrate a factual dispute exists, and, moreover, the available evidence, including photographs from the day of arrest, unequivocally refute Plaintiff's claims of injury.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in its entirety.

SO ORDERED:

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        October 11, 2022